**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CR 10-1126-1-PHX-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Jonathan Ortiz Troncoza, | ) | |
| Defendant. | ) | |

Pending before this Court is Defendant Jonathan Troncoza's Motion for Revocation or Amendment of Magistrate Judge's Order Dated December 8, 2010 Denying Reconsideration of Detention Order Dated August 26, 2010, Doc. 154. For the reasons set forth below, that motion is denied.

Although technically speaking the motion seeks to revoke or amend only Magistrate Judge Burns's Order denying reconsideration of her previous detention Order, the Court elects to treat Defendant's motion as an appeal of the detention decision as a whole. The Magistrate Judge correctly noted that much of this evidence presented in connection with the motion for reconsideration was not "new" to the extent that it could have been originally presented at the detention hearing. Nevertheless, the Court will consider it now, because the Court may consider, in its discretion, additional evidence beyond that raised in the detention hearing in considering any appeal. *United States v. Koenig,* 912 F.2d 1190, 1193 (9th Cir. 1990). There seems to be little sense in returning the matter to Magistrate

Judge Burns to consider evidence she has already evaluated.

When, as in this case, the original detention decision is made by a magistrate judge, the person ordered detained "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). (2010). The review of the magistrate judge's decision is *de novo. United States v. Koenig,* 912 F.2d 1190, 1193 (9th Cir. 1990). In this case, the Court has reviewed the indictment against the Defendant (Doc. 3), the Pretrial Services bail report as to the Defendant (Doc. 48), the transcript of the detention hearing that occurred on August 26, 2010, the Motion for Reconsideration by Jonathan Ortiz Troncoza and its Exhibits (Docs. 126, 127), the government's Response (Doc. 139), Magistrate Judge Burns's December 8 Order denying the Motion for Reconsideration (Doc. 147), and the present Motion.

In determining whether to detain an individual the statute requires the Court to consider:

1. The nature and circumstances of the offenses charged;
2. The weight of the evidence against the Defendant
3. History and statutorily specified characteristics of the person; and
4. The nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release.

18 U.S.C. § 3142(g).

**I.    The Nature and Circumstances of the Offenses Charged.**

Defendant is charged in Count 1 of the indictment with conspiracy to distribute more than 1000 kilograms of marijuana in violation of the Title 21 U.S.C. § 841(b)(1)(A)(vii). He is charged in Count 2 of possessing with intent to distribute more than 100 kilograms of a mixture or substance containing a detectable amount of marijuana in violation of Title 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vii). He is charged in Count 3 with money laundering in violation of Title 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(h). He is charged in Counts 5,7,8 and 9 with separate acts of money laundering in violation of Title 18 U.S.C. § 1956(a)(1)(A)(i), and in Counts 6 and 10 with separate acts of money laundering

in violation of Title 18 U.S.C. § 1956(a)(1)(B)(i).

If the Court finds probable cause to believe that Defendant committed a statutorily specified drug offense for which the Controlled Substances Act, 21 U.S.C. et. seq., specifies a maximum penalty of ten years or more (which is applicable to at least Counts 1 and 2 of the indictment against Defendant) then there exists a statutory presumption, subject to rebuttal, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." Title 18 U.S.C. § 3142 (e)(3). The return of an indictment for the charge establishes such probable cause. *United States v. Smith (Gerald),* 79 F.3d 1208 (D.C. Cir. 1996). Thus, the presumption is applicable against Defendant.

The presumption imposes a burden of production, not a burden of proof. Even after Defendant has met the burden of production, however, the presumption may continue to carry weight. *United States v. Jessup,* 757 F.2d 378 (1st Cir. 1985). The likely sentence under the Sentencing Guidelines can affect the weight to be given the presumption, but not its applicability. *United States v. Moss,* 887 F.2d 333 (1st Cir. 1989). Defendant can seek to rebut the presumption by introducing evidence relating to any of the factors listed in Title 18 U.S.C. 3142(g).

**II.     The Weight of the Evidence Against the Defendant**

The weight of evidence against Defendant on the charges is among the least important of the factors to be considered in making the detention decision. *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985). And indeed, the government made no significant effort to establish the weight of the evidence on the charges against Defendant here. At the detention hearing the IRS special agent familiar with the investigation leading to the indictment testified that Defendant had apparently used an alias to rent a non-refrigerated warehouse in Cleveland, Ohio and in other locations. The warehouses were not refrigerated and were thus not conducive, presumably, to the wholesale storage of seafood. The special agent also testified that Defendant's father was apparently assassinated in Mexico by a drug cartel because Defendant's DTO was in debt to the cartel for approximately one million

dollars. The Court notes the inherent problems with such hearsay testimony and has given such hearsay evidence little weight here.

**III.　History and Statutorily Specified Characteristics of Defendant.**

Defendant is a citizen of the United States with no significant criminal history. During his interview with the pretrial office, Defendant indicated that he received a $6,000 monthly wage from his employ at Sea of Cortez Seafood and Produce Distribution, LLC, which was his main employment focus, although he did also do sporadic masonry work. He also stated that he lived with his wife and their three children, his wife's child from a previous relationship, and his brother, sister-in-law and nephew. Although Defendant stated that his wife worked at the VA hospital in Tucson he was unsure how much she was paid.

Defendant admitted to the use of alcohol and cocaine. He admitted to drinking approximately 18 cans of beer per weekend. His voluntary urine specimen submitted at the approximate time of his arrest on August 24, 2010, tested positive for cocaine

At the detention hearing, the special IRS agent familiar with the investigation testified that he had reviewed the bank records from Sea of Cortez and Defendant's personal accounts as well as reviewed the disclosures of the defendants regarding their income to both the IRS and various state agencies throughout the United States. He also reviewed the business records of Sea of Cortez that were seized during the execution of two separate search warrants on Defendant. Numerous weapons were also seized during the searches

For the period 2005 through 2009, Defendant and his spouse disclosed a total income of $4,400 to state agencies within the United States. On their federal tax returns they claimed $11,000 in income in 2005 and $21,000 in 2006. During 2005-2009, there were deposits made into Defendant's personal accounts of rounded figures generally in amounts less than $10,000 that totaled in excess of $316,000.

Although deposits were also made in the Sea of Cortez account, no payroll checks were issued nor was there proper withholding for tax purposes during this period. Although Defendant indicated he operated the Sea of Cortez out of his residence, the search of Defendant's residences revealed no payroll records, nor any records of wages, accounts

- 4 -

receivable, ledgers, customer records, bills of lading, nor any advertising or trucks.

The special agent further testified that "We found a passport in a name other than Jonathan Troncoza with his picture on it from Puerto Rico. We found a Puerto Rican birth certificate in another name, and we found multiple state IDs which I believe included Ohio with different people's names on them with Mr. Jonathan Troncoza's picture on it." Tr. at 1:25. He further testified that Defendant used the name Michael Christiansen to rent a warehouse in Cleveland, Ohio, and that between January 2005 and December 2009, Defendant had crossed the Mexican border 24 times.

After the hearing, Magistrate Judge Burns concluded that Defendant had not overcome the presumption for several reasons. Among them were (1)"that the Court notes that there was some deception regarding his – whether or not he was living with his wife and children, very little verification as to his current residential situation;" (2) the evidence that Mr. Jonathan Troncoza was not making $6,000 a month from Sea of Cortez as he had reported to pretrial services; (3) the evidence that Mr. Jonathan Troncoza had various forms of false identification; (4) the evidence that Mr. Jonathan Troncoza used cocaine and alcohol; (5) evidence concerning his access to large amounts of cash; and (6) inconsistencies in his reported income. This Court shares those concerns and similarly concludes that, in light of them, Defendant does not overcome the presumption that he is a flight risk whose appearance cannot be assured by any condition or combination of conditions.

In his Motion to Reconsider, Defendant included additional records of the operations of Sea of Cortez for the years up to and including 2007. But those records in no way lessen the concerns of this Court, concerning Defendant's claim to pretrial services that his income resulted from his wholesale seafood operation, and even Defendant does not now appear to take the position that the seafood operation existed to any significant degree at the time of his arrest. None of the other evidence he offers seems to call that in question, or cure the other inconsistencies noted by the Magistrate Judge and similarly observed by this Court related to Defendant's inconsistent reporting regarding his finances, his place of residence, his lack of any real business ties to the community, his use of drugs, his use of forms of false

identification, his access to large amounts of cash, and his crossing history into Mexico. Defendant does observe that his grandmother is willing to put up her house as security, but the Court is not satisfied that risks taken by Defendant's grandmother are sufficient to insure Defendant's appearances as required, and it is unwilling to exact a penalty on Defendant's grandmother should her house become forfeit because of his behavior. Therefore, this Court concurs with the Magistrate Judge that Defendant should be detained as a flight risk whose appearance cannot be assured by any condition or combination of conditions.

**VI.     The Nature and Seriousness of the Danger to Persons or the Community**

The Court notes the statute gives rise to a presumption not only of flight risk, but also that no condition or combination of conditions can reasonably assure the safety of the community. While it is true that Defendant has no significant criminal history, and he is a citizen of the United States, the IRS special agent testified that during the searches of Defendant's homes, numerous weapons were observed and seized. It is this Court's view that under such circumstances the presumption that community safety cannot be assured arising from the probable cause associated with the indictment for the crimes charged has not been overcome and Defendant should be detained.

**IT IS THEREFORE ORDERED** denying Defendant's Motion for Revocation or Amendment of Magistrate Judge's Order Dated December 8, 2010 Denying Reconsideration of Detention Order Dated August 26, 2010 (Doc. 154).

DATED this 10th day of January, 2011.

_____
G. Murray Snow
United States District Judge